UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROBIN T.,

                Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. C25-1909-SKV

ORDER REVERSING THE
COMMISSIONER'S DECISION

Plaintiff seeks review of the denial of her application for Supplemental Security Income (SSI).  Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff was born in 1970, has a GED, and has worked as a home attendant, dining room attendant, and small product assembler.  *See* AR 37, 41, 56.  She last worked in or around 2015.  *See* AR 293, 296.

ORDER REVERSING THE COMMISSIONER'S
DECISION - 1

On July 11, 2021, Plaintiff applied for benefits, alleging disability as of June 15, 2013. *See* AR 17.  Her application was denied initially and on reconsideration, and she requested a hearing.  *See id*.  The ALJ conducted an initial hearing in September 2023, AR 34-62, and, after obtaining a consultative examination, conducted a second hearing in September 2024, AR 63-82. At the second hearing, Plaintiff amended her alleged onset date to the July 11, 2021, protective filing date.  *See* AR 67-68.  On September 27, 2024, the ALJ issued a decision finding Plaintiff not disabled.  AR 17-28.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one**:  Plaintiff has not engaged in substantial gainful activity since July 11, 2021.

**Step two**:  Plaintiff has the following severe impairments:  cervical degenerative disc disease status post-surgery, lumbar spine degenerative disc disease, and osteoarthritis.

**Step three**:  These impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity (RFC)**:  Plaintiff can perform light work with the following additional limitations:  stand up to four hours in an eight-hour workday and up to thirty minutes at one time; walk up to four hours in an eight-hour workday and up to thirty minutes at one time; frequent bilateral reaching, fingering, and feeling; frequent pushing and/or pulling with the bilateral upper extremities; frequent operation of foot controls bilaterally; occasional climbing; frequent balancing; occasional stooping, kneeling, crouching, and crawling; frequent exposure to extreme humidity, wetness, and pulmonary irritants; occasional exposure to extreme vibrations, noise greater than moderate, and to hazards such as unprotected heights and dangerous machinery; no exposure to extreme cold or heat; and occasional operation of a motor vehicle.

**Step four**:  Plaintiff has no past relevant work.

**Step five**:  As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled.

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P., App. 1.

ORDER REVERSING THE COMMISSIONER'S
DECISION - 2

AR 17-28.

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision.  AR 1-5.  Plaintiff appealed the final decision of the Commissioner to this Court.  Dkt. 1.  The parties consented to proceed before the undersigned Magistrate Judge.  Dkt. 2.

**LEGAL STANDARDS**

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on harmful legal error or not supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005).  As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination."  *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted).  The Court looks to "the record as a whole to determine whether the error alters the outcome of the case."  *Id*.

Substantial evidence is "more than a mere scintilla.  It means - and means only - such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (cleaned up); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for evaluating symptom testimony, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.  *Id.*

ORDER REVERSING THE COMMISSIONER'S
DECISION - 3

**DISCUSSION**

Plaintiff argues the ALJ's step five finding lacks the support of substantial evidence. Specifically, Plaintiff asserts error given the failure of the Appeals Council to address the inconsistency between the job-number estimates offered by the vocational expert (VE) at the hearing and relied on by the ALJ in the decision, and the significant and probative competing job-number estimates offered by Plaintiff after the hearing. The Commissioner argues the ALJ's decision is free of harmful legal error, supported by substantial evidence, and should be affirmed.

**A.    The Step Five Finding Lacks the Support of Substantial Evidence**

At step five, the Commissioner bears the burden of establishing that the claimant can perform other work existing in significant numbers in the national economy. 20 C.F.R. § 416.960(c)(2). The Commissioner may satisfy this burden through VE testimony identifying representative occupations that a person with the claimant's RFC can perform. *See Ford v. Saul*, 950 F.3d 1141, 1160 (9th Cir. 2020). "Given its inherent reliability, a qualified [VE's] testimony as to the number of jobs existing in the national economy that a claimant can perform is ordinarily sufficient by itself to support an ALJ's step-five finding." *Id*.

However, while "inherently reliable", a VE's testimony is "not incontestable." *Buck v. Berryhill*, 869 F.3d 1040, 1051-52 (9th Cir. 2017). Where, as here, a claimant challenges the VE's job-number testimony by submitting competing evidence, the Court considers "on a case-by-case basis whether new evidence submitted by a claimant is 'meritless or immaterial' or has 'significant probative' value." *Wischmann v. Kijakazi*, 68 F.4th 498, 506 (9th Cir. 2023) (quoting *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1193-94 (9th Cir. 2022)). If significant and probative, the Court must remand the matter to the ALJ to address the inconsistency between the competing job-number estimates. *Id*. (citing *White v. Kijakazi*, 44 F.4th 828, 837 (9th Cir. 2022);

ORDER REVERSING THE COMMISSIONER'S
DECISION - 4

*Buck*, 869 F.3d at 1052).  If either not probative or not significant, the ALJ's determination must be upheld.  *Id*. (citing *Kilpatrick*, 35 F.4th at 1195).

In this case, in response to a hypothetical corresponding to the assessed RFC, the VE identified three occupations Plaintiff could perform:  (1) office helper (Dictionary of Occupational Titles (DOT) 239.567-010), with 68,000 jobs in the national economy; (2) basket filler (DOT 529.687-010), with 202,000 jobs in the national economy; and (3) egg sorter (DOT 529.687-074), with 62,000 jobs in the national economy.  AR 77-78.  The VE stated that he relied on both the DOT and his forty years of vocational experience with onsite job analyses on positions to support his testimony.  AR 79.  The VE also, in response to questioning by Plaintiff's counsel, testified that the source of the job numbers were specific to the DOT codes for the jobs and came from the "Bureau of Labor Statistics [(BLS)] American Community Crosswalk Survey to Matrix 2002 Occupational Crosswalk Office of Occupational Statistics and Employment Projection," which came from the "Office of Employment Statistics and from projections of the [U.S.] Department of Labor."  AR 80-81.  He testified that he did not know the source for the Crosswalk Survey and that the job numbers came from 2002, "but I don't think there's been a lot of variation."  AR 81.

After the ALJ issued his decision, Plaintiff submitted evidence to the Appeals Council offering competing numbers for the identified jobs.  *See* AR 414-27.  Specifically, in a memorandum accompanied by reports generated from "Job Browser Pro" by "SkillTRAN", Plaintiff's counsel asserted that there are only 5,293 office helper positions, 189 basket filler positions, and 181 egg sorter positions in the national economy, for a total of 5,663 positions for these occupations.  *See* AR 414-22.  Plaintiff's counsel also submitted a document containing a "walkthrough" of the process he used to generate the Job Browser Pro reports.  *See* AR 423-27.

Although adding it to the record as an exhibit, *see* AR 5, the Appeals Council did not address the counter evidence, *see* AR 1-3, and therefore did not discuss the discrepancy with the VE's numbers.  Plaintiff argues that the evidence is both significant and probative, and that the failure to address the discrepancy constituted harmful error.  *See, e.g., White*, 44 F.4th at 837 ("If the Appeals Council had credited White's estimates that there were only a total of 4,290 jobs (counting all three jobs) in the national economy that he could perform, there is a reasonable probability that the outcome of his proceeding may have been different."); *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528-29 (9th Cir. 2014) (finding 25,000 jobs nationally a significant number, but noting it was a "close call."); *Beltran v. Astrue,* 700 F.3d 386, 390 (9th Cir. 2012) (finding 1,680 jobs nationally not significant).

The Commissioner disputes the probative value of the evidence submitted to the Appeals Council.  Pointing to the Ninth Circuit's decision in *Wischmann*, 65 F.4th at 506-07, the Commissioner argues that the Court should not find the evidence probative because Plaintiff's counsel used a different source and therefore did not produce data using the same methodology used by the VE, and because counsel has no demonstrated expertise using Job Browser Pro or interpreting the output.  However, as the Ninth Circuit more recently found, "whether a claimant replicates a VE's methodology or pulls from the same sources" and "whether a claimant's counter evidence is produced by someone with expertise," are both relevant, but not dispositive, factors in determining whether the counter evidence is probative.  *Powley v. Bisignano*, 169 F.4th 1158, 1167-68 (9th Cir. 2026).  Counter evidence need not "mirror that of a VE's source and methodology[,]" and "the data creator's expertise is one of several factors" considered in determining whether evidence is probative.  *Id*. at 1167.  The Court, as such, considers these and

ORDER REVERSING THE COMMISSIONER'S
DECISION - 6

other factors specific to this case in determining the probative value of the counter evidence at issue.

Here, while Plaintiff's counsel did not use the same source as the VE, he did utilize a source "frequently relied on" by the Social Security Administration (SSA), *White*, 44 F.4th at 837, and recognized as reliable by the Ninth Circuit, *see Powley*, 169 F.4th at 1163, n.1 ("In [*White*, 44 F.4th at 832, 837], we discussed that SkillTRAN, and its 'flagship program,' Job Browser Pro, is a reliable source used by VEs and the SSA in estimating the number of relevant jobs in the national economy.  And in *Wischmann*, [F.4th at 502-03 & n.1,] we confirmed this and provided further explanation of SkillTRAN's methodology.") (citations modified). Moreover, as Plaintiff observes, the VE testified that the data he relied on was twenty years old at the time of the hearing, and that he did not know the underlying source of the publication cited, *see* AR 81, whereas the counter evidence shows Job Browser Pro estimates from 2023 and 2024, *see* AR 415, 417-20.  The Court, under these circumstances, does not find the mere difference in the source utilized determinative.  *Contra Kilpatrick*, 35 F.4th at 1194 (considering, in addition to the difference in methodology and lack of expertise, that the plaintiff's attorney "conceded that his figures 'may not be completely accurate[,]'" that the data he used was "roughly seven years old at the time," and that he applied a methodology that required an "improbable assumption" and produced an "improbable result").

Also, while Plaintiff's counsel has not demonstrated his expertise, he did provide an explanation of the methodology he used to generate job numbers using a reliable source, and submitted a document containing screenshots depicting an example of the methodology employed.  *See* AR 414-27.  The Commissioner does not identify and the Court does not find any basis for calling the accuracy of the evidence provided by counsel into question.  In fact, in

ORDER REVERSING THE COMMISSIONER'S
DECISION - 7

pointing to the use of a different source/methodology and an absence of expertise, the Commissioner acknowledged that the evidence submitted by counsel contained only "some of the evidentiary deficiencies described in *Wischman*."  Dkt. 15 at 2-3.  *See also Wischmann*, 65 F.4th at 506-07 (noting counsel's letter stated only that Job Browser Pro "produced a lower number of positions" and "provided no information about how the job numbers were produced," including who produced the outputs, the queries entered, variables changed, filters applied, or the version used, which did not allow for a determination of whether the program was current or out of date; also noting the attached printout did not state the data was produced with Job Browser Pro, contained only raw data that was "not comprehensible to a lay person," "did not provide the interpretation to make the pages meaningful to a court[,]" and there were "'obvious reasons to question'" the printouts' reliability, including numbers that did not fully correspond to those stated in the letter).  The Court, as such, also declines to find counsel's lack of expertise in calculating job figures determinative.  *Powley*, 169 F.4th at 1168 (finding that, while there was limited evidence regarding the attorney's expertise, "that deficiency is not sufficient to doom [the] counter evidence").

The Court, in sum and with consideration of the source utilized, the explanation provided, the example of the methodology employed, and the details included in the explanation and example, finds the counter evidence probative.  *See* AR 415 (stating that the attached reports explain how SkillTRAN's methodology generates individual DOT estimates using BLS data, that the data was produced in June 2023 and October 2024, and that it was "generated by entering the DOT code into the program, with no filters, and using the program's built-in option to generate a DOT specific estimate of jobs numbers."); AR 417-22 (report generated from "Job Browser Pro PC by SkillTRAN LLC – Version 1.7.5", with dates in 2023 and 2024); and AR

ORDER REVERSING THE COMMISSIONER'S
DECISION - 8

423-26 ("walkthrough" example showing inputs and lack of filters applied).  *See also Powley*, 169 F.4th at 1167-68 (finding evidence drawn from SkillTRAN and the U.S. Census Bureau probative where it was produced using data sources and a methodology frequently relied on by the SSA and "because we see no other factors which call the accuracy of the evidence into question") (citing *White*, 44 F.4th at 836-37).

The Court must also determine whether the evidence is significant.  "Significant evidence 'in the context of job-number estimates is a measure of the discrepancy between the VE's estimates (upon which the ALJ relied to render the step-five finding) and the claimant's estimates.'"  *Powley*, 169 F.4th at 1169 (quoting *Wischmann*, 68 F.4th at 505).  In this case, the job numbers submitted by Plaintiff are significantly different than those identified by the VE and adopted by the ALJ at step five.  *Compare* AR 27, 77-78 (identifying 68,000 officer helper jobs, 202,000 basket filler jobs, and 62,000 egg sorter jobs), *with* AR 414-22 (identifying 5,293 office helper jobs, 189 basket filler jobs, and 181 egg sorter jobs).  The Court, as such, has no difficulty in finding the counter evidence significant.  *See, e.g., Powley*, 169 F.4th at 1169 (finding discrepancies between "39,425 versus 27" jobs, "14,700 versus 19" jobs, and 24,700 versus zero jobs comparable to the discrepancies at issue in *White* and *Buck* and therefore significant) (citing *White*, 44 F.4th at 837; *Buck*, 869 F.3d at 1047).

There is, finally, no dispute that the Appeals Council did not address and resolve the discrepancy between the job-number estimates offered by the VE and Plaintiff's counsel.  This matter is therefore properly remanded so that the ALJ can address the counter evidence and resolve the inconsistency between the job-number estimates.  *See id*. ("The ALJ is required to

ORDER REVERSING THE COMMISSIONER'S
DECISION - 9

both 'address' the discrepancy *and* 'resolve the inconsistency between the job-number estimates provided by [plaintiff] and by the VE.'") (quoting *White*, 44 F.4th at 837).[3]

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

Dated this 23rd day of June, 2026.

S. KATE VAUGHAN
United States Magistrate Judge

---

[3] "Under SSA regulations, a claimant has a right to submit additional evidence to the Appeals Council, which the agency may choose to make part of the administrative record where it finds that certain conditions are met, as it appears to have done here." *White*, 44 F.4th at 837 (citing 20 C.F.R. § 404.970(b)). As such, the Court properly remands this matter to the ALJ. *See id.*

ORDER REVERSING THE COMMISSIONER'S
DECISION - 10